JjBYRNES, Chief Judge.
Defendants-appellants, Tamira L. West and her insurer, Patterson Insurance Company, appeal a judgment pursuant to a judge trial on the merits condemning them to pay the plaintiff, Benjamin Jones, $6,138.49 in general damages and $3,861.51 for medical expenses, for a total of $10,000.00. The judgment was subsequently amended to award Mr. Jones legal interest and costs against Patterson Insurance Company.
*201 The defendants appealed contending that the trial court erred in finding that, more probably than not, Mr. Jones, as a pedestrian, was injured on January 10, 1997 by a motor vehicle driven by Tamira West. Defendants do not contest their negligence; they contest only that Mr. Jones proved that he was injured. In other words, there are no legal issues in dispute and the entire case turns on the sole fact question of whether the plaintiff, Mr. Jones, was actually involved in the accident or whether he was merely an unscathed pedestrian onlooker. It is not disputed that another pedestrian, his niece, Tazariah Earls was injured.
Accordingly, we will review the fact findings of the trial judge according to a manifest error standard of review.
IgAt the time of the incident, Tamira West was operating a 1997 Toyota Camry in a northerly direction on Paris Avenue. At the accident scene, Paris Avenue is two lanes in each direction divided by a neutral ground. Ms. West, testified by deposition that there was an RTA bus stopped in front of her to the right directly behind an Orleans Parish school bus in such a manner as to obstruct her view of the school bus until she passed the RTA bus in the left lane. She was unable to see the school bus’ stop-bars until after she had begun to pass the RTA bus. As Ms. West’s vehicle drew parallel to the front left side of the school bus, plaintiff, Tazariah Reeyan Paris Earls, was struck by the right-hand mirror of defendant’s Camry. Ms. West further testified that she immediately stopped her vehicle, looked back and saw the plaintiff, Benjamin Jones, helping Ta-zariah Earls to her feet.
Prior to trial, Paterson Insurance Company settled Tazariah’s claim, but Mr. Jones also filed suit contending in his petition that he had thrown “himself on top of [Tazaría] as he pulled her away and likewise he received injuries by coming into contact with the child and the ground as he attempted to protect her from the impact of the Toyota Camry.” Defendants deny that Mr. Jones was involved in the incident and argue that, therefore, he could not have been injured as a result of it.
Tamira West was released from personal liability, and it was stipulated that should a judgment be rendered in favor of Mr. Jones it would be limited to the Patterson Insurance Company policy limits of $10,000.00 plus interest and costs.
The school bus driver, Diana Armour, and Mr. Jones were the only two witnesses to give live testimony at the trial. The testimony of the defendant, Tamira West, and the independent witness, Isaiah Washington, was submitted in deposition form.
l3Mr. Jones testified that in the evenings he would meet several nieces and nephews at the school bus stop, including the plaintiff, Tazariah Earls, who was five years old at the time of the incident. He would take them off the bus and walk them across the street. He testified that on January 10, 1997:
... I got my niece off of the bus and my nephew. And my nephew and Kim ‘lil kids, but they stood in the neutral ground; Tazariah was still right there with me. And we walked from right there by the doors in front of the bus and was attempting to cross the street when this car came and I saw it coming and I pulled Tazariah, but I didn’t pull her fast enough. The mirror hit her and when it hit her it knocked me back. And I tried to catch myself with my right hand and that’s how I mess my thumb up. And I just covered her up ‘cause I thought maybe something was going to come and hit her because nobody was not there to stop the traffic or nothing.
*202 [[Image here]]
Well, through the impact from Tazari-ah — the mirror hitting Tazariah, it knocked her back, but then I pulled myself back up and tried to cover her up.
As a result, he testified that his back, neck and right hand were injured. He also testified that he told the EMT team that he was injured. He testified initially that he thought he talked to the police on the scene, but his name does not appear on the police report. He later explained that in all of the confusion following the incident that he may not have seen the police at the scene and may never have actually talked to them. He further testified that Isaiah Washington had gotten his child off of the bus before Mr. Jones had gotten Tazariah off and was going up Paris Avenue on the same side of the street that the bus was on. It was not necessary for Mr. Washington to cross the street because he lived on the same side that the bus was on. Mr. Jones explained that neither Mr. Washington nor anyone else was on the left side of the bus next to the driver’s window.
| ¿Mr. Jones testified that he was standing in front of the bus on the left hand side when he sent the first children for whom he was responsible across the street. He then walked back to the right-hand side of the bus where Tazariah was waiting for him near the door to the bus and walked her in front of the bus to the left-hand side of the bus where she was struck by the defendant’s vehicle.
Mr. Jones explained that although Dr. Miller’s report dated January 20, 1997, states that the accident occurred on January 15, 1997, that it actually occurred on January 10, 1997. He further explained that he told Dr. Miller that he was “hit from the impact of the car hitting my niece,” in spite of the fact that Dr. Miller’s report states that:
At that time the patient states that he was walking across the street, when a car hit him on his right side. Patient stated that he fell backwards on to the ground.
Mr. Jones admitted that Mr. Washington was at the scene getting his child off the bus that day. He could offer no explanation for why Mr. Washington would testify that Mr. Jones was not with Tazariah when she was hit other than “maybe he didn’t see what he thought he saw.”
Diana Armour, the school bus driver, confirmed the fact that there was an RTA bus behind her positioned in such a way as to obscure the defendant driver’s view of her bus’ stop arm, but one of her flashing lights was probably visible. She said that when Tazariah was struck Mr. Jones was “no where around. He was on the opposite side of the bus when the accident happened,” by the door of the bus waiting for additional children to get off. She described the accident as follows:
I seen the accident. I seen when the mirror, it hit her hand. Now which hand it was I don’t remember, but it spun her. She spun around and she came to, like, a sit. And when she came to the sit, then he came out and went over.
1 kMs. Armour explained that Mr. Jones did not come over until after the accident had occurred and the vehicle had passed. She did agree that Mr. Jones usually held on to Tazariah’s hand, but that on the day and time of the incident he did not. However, on cross-examination she testified that Mr. Jones “went on top of her after the accident,” and at the time of the accident “he was close. But he wasn’t holding her hand, no.” She testified that she did not talk to any police officer on the scene. Although Ms. Armour testified on direct *203 that Mr. Jones was “no where around” when Tazariah was struck, on cross examination she stated that “he was close” and that he “went on top of [Tazariah] after the accident.” Therefore, Ms. Armour testimony on cross examination is much closer to Mr. Jones’ version of events than her testimony on direct, close enough that the trial court could have reasonably attributed the small remaining discrepancies to imperfect memory probably arising out the fact that Ms. Armour was quite naturally focusing her attention and concern on the injured small child, caused by an accident she tried in vain to short circuit by giving a warning blast of her horn to warn the oncoming defendant driver.
Appellants make much of the fact that the police report, which was entered into evidence without objection, makes no mention of Mr. Jones, contending that it is reasonable to infer that had Mr. Jones been involved in the accident his involvement would have been noted on the report. But Ms. Armour testified that contrary to what one would ordinarily expect, none of the police on the scene ever spoke to her. However, the police report indicates otherwise. She also added that the major concern at the scene was over Tazariah Earls, a small child who had obviously been struck. The trial court could have reasonably inferred that with the |fishock of events Mr. Jones would have been more concerned about his niece than with the expression of any concern for himself and as he suffered no visible injuries and was not directly struck by the defendant’s automobile, he might have been overlooked by the police in the midst of what Ms. Armour admitted was a “lot of commotion after this particular incident.” Ms. Armour responded affirmatively when asked if:
Firemen came, police, ambulance, school board officials and, every body, it was a major deal, wasn’t it?
Defendants point out that the testimony of the- plaintiff, Mr. Jones, is self-serving because he has a financial interest in the outcome of the case and that it conflicts with the testimony of Mr. Isaiah Washington. The defendants contend that the trial court should have given greater weight to Mr. Washington’s testimony to the effect that Mr. Jones was not involved in the accident than to Mr. Jones’ conflicting testimony, because Mr. Washington was an independent witness with no financial or personal interest in the outcome of the case as opposed to Mr. Jones who gave financially motivated testimony.
Defendants’ argument fails to take into account that Mr. Washington’s testimony could not be reconciled with the equally independent testimony of Ms. Armour. More significantly, it could not be reconciled with the undisputed facts of the case. At several points in his testimony, Mr. Washington referred to the injured child as a boy. Then he stated that he was unsure of the sex of the child, but he thought that it was a boy. Contrary to the testimony of Ms. Armour as well as that of Mr. Jones, Mr. Washington said that Mr. Jones was nowhere around and that after ten minutes no one had still come up to help the child. Even the defendant driver of the vehicle observed Mr. Jones’ presence at the side of the victim pim-mediately following the accident. Mr. Washington also testified that he did not see the RTA bus in spite of the fact that he was looking towards the back of the bus at the time of the accident. Mr. Washington’s testimony to the effect that the automobile that struck the child stopped at first in response to the school bus’ extended stop arms and then proceeded forward could not be reconciled with the testimony of any other witness. Regardless of whether this Court would credit Mr. Washington’s emphatic statement that Mr. *204 Jones could not have been injured, in view of the many problems in Mr. Washington’s testimony, we cannot say that the trial judge was unreasonable if, in reaching his decision in favor of Mr. Jones, he decided to give less weight to Mr. Washington’s testimony than to that of the plaintiff, Mr. Jones:
“It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinders choice between them cannot be manifestly erroneous or clearly wrong. [Arceneaux v. Domingue, 365 So.2d 1330, supra at 1333 (La.1978), Watson v. State Farm Fire and Casualty Ins.Co., 469 So.2d 967 (La.1985) ] Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. [Canter v. Kohring, 283 So.2d 716, supra (La.1973)] ... Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility | ¡¡determination... .But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” [Emphasis added.]
Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony. Id. However, where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. If the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
*205 Ultimately, we find, after a review of the record as a whole, that Mr. Jones’ version of events is not so internally inconsistent or contradicted by objective or 19documentary evidence, or so contrary to the weight of the testimony of disinterested witnesses that a reasonable fact finder could not chose to believe Mr. Jones’ version of events if he were found to be a credible witness — which finding the trial court obviously made and was entitled to make. The trial judge was the only fact finder in a position to be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, supra. Under the manifest error standard of review by which this case must be judged, this is a classic credibility call within the ambit of the trial court’s authority. Even if this Court felt that had it been the trier of fact that we would have reached a different conclusion, it would not be proper for this Court to substitute its judgment for that of the trial court in the absence of manifest error.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.